The next case this morning is 5220343, Country Preferred Insurance Company v. Westerheide. Arguing for the appellant is Michael McGlynn. Arguing for the appellee is David Jenkins. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, your honor. Good morning, your honor. Mr. McGlynn, are you ready to proceed? I am, your honor. Go right ahead. Thank you very much. The issue here is in a UIM case, whether they received timely notice within two years when a letter was sent from our law office to the country mutual claim rep that was assigned to the case that had been opened in which we indicate to country mutual and the claim rep that our office was retained by the insureds to prosecute a claim on their behalf as a result and for the injury sustained on October the 6th of 2016. And whether we gave them timely notice that then we were seeking a compensation for the injuries of their insured. In this case, as far as the dates are concerned, October the 6th of 2016 was a Missouri rear-end motor vehicle accident in which my client was injured. And the record shows that country mutual, her insurer opened up a file that day, which also included that they obtained a motor vehicle accident report, signed medical authorization, excuse me, a statement from her. And there was also later they obtained a signed medical authorization so that they were following her progress medically before I got into the case. And for example, in October the next year, the records reflect that the patient was consulting with the claim rep that she had to have surgery. So then nine months before the two years was up, my firm sent a letter to country mutual and specifically the claim rep that was assigned to that claim. And the claim number has never changed. And that was faxed to her indicating that we were going to pursue a claim for injuries to the insured and putting them on notice of that. Now, that letter is not a letter that says we are pursuing a claim for property damage. It doesn't say we're pursuing a claim for medical bills. It says we are pursuing a claim for her injuries. The policy involved has only two provisions that would then attend. That would either be a UM claim or a UIM claim, depending on whether I determined whether there was insurance or not. So the policy in play for UIM and for UM provides recovery of injuries, bodily injuries, damages for bodily injuries of the individual. So that letter nine months before the two years is up, I think the only fair reading of it is that it did provide them with notice that we were seeking bodily injuries recovery for their recovery. So that's February the 8th of 2018. And so the intake person that had it at the insurance company did make notes that appear in the court file and record in which she indicates, uh, oh, I want to watch language. You're being recorded. Yeah. Um, I'm sorry to run or I, uh, I pressed the wrong button here or something. Um, and so I'll keep talking until I figure this out if you want me to. I apologize. Okay. So on, there's a notation on February the 19th of 2018 that, uh, by Leah Bombard that she had received a claim packet. And it says, uh, it says, it also says in the comment section, other two, eight, 18 attorney LOR that is letter of representation. So that she they're characterizing claim packet and they use the word other includes to include letter of representation. So now under that policy, there are only two ways to, uh, collect for bodily injury. It's either UM or UIM. By then they had figured out that this was a UIM claim. And I, I figured out eventually that it was a UIM claim, but under the policy, there are many requirements that the plaintiff must, uh, uh, be able to in order for there to be a recovery. For example, the, the, what has to happen is after giving them notice, I don't, I may never end up with, with a claim against them because I don't know what the policy actually is yet. And, uh, and in Missouri, they don't, they don't disclose those while you're negotiating. And it's a 10 year statute in Missouri, but in any event, you have to either by formally or informally, you have to get them to tender the policy limit and you have to then, uh, uh, contact country mutual and say, look, we have, they've tendered the policy limit. We now have the policy limit that they've tendered. Is it okay for us to accept it? Country mutual has the right to say yes or no. If they say no, don't accept it. Don't sign the what they would be on the hook for, uh, get their say the first hundred back from the other driver. We did all that. We successfully prosecuted the claim. We notified country mutual. We were in contact with them throughout, uh, that the, uh, we notified them that they had tended the policy, that, uh, we were, that they had, I had asked them for verification, which they provided the limit. I asked them for verification that there was no stacking and I advised country mutual that we may actually therefore have a viable claim to proceed with, with them under the, uh, UIM provision. Now, uh, the, the, uh, uh, the, uh, the sharing of that information from our office with, uh, oh, the other thing is with, with their policy, what happens is, uh, they have built into it. Um, I have to jump through all those hurdles and then it says, if agreement cannot be reached on the amount of the damages, either party must make a written demand for arbitration. And when this is done, each party will select an arbitrator. So under their policy, they, they, they require that first you have to, and, uh, uh, duty of good faith is implied in every contract. It says if agreement cannot be reached on the amount. Okay. So after I, I get all this tendering and I get them to say, okay, now we've got it. Now, what I have to do is I have to participate with them in, in settlement discussions on the amount. And then if we can't agree on the amount, then whoever can't agree, it says, it says either party must make a written demand for arbitration. So, uh, it's the party who's decided that they don't want to go along with us and say, they, each party would then, if they've given up on, on the agreement amount, then they would ask for the arbitration. So that's their policy, those words, and that's what we proceeded with. So in this case, uh, it was within 13 days of the two year anniversary. It's at 13 days after that. I notified, uh, the, uh, the people at, um, and in particular, the person that we had been working with that I had been advised, uh, somewhat informally by the, uh, by the, uh, that's on 10, 19 of 18, 10, 19 of 18. So that's 13 days after the two year anniversary. I advised them that, that I was told that they were, they anticipated tendering the policy. They couldn't tell me what the policy was, but they would, they would formally do that as soon as practical. And I advised them that is them. I advised the claim rep from country mutual that they are going to tender the policy. So we may actually have a viable claim, but I'm going to have to wait and see if they actually, um, they actually, uh, um, uh, what their limits are and whether you'll agree to let me do this. Well, anyway, that day, then instead, I get a response from a new person in the file that says, uh, that says, and he characterizes on a page two 39 of the record C two 39. It said that he, uh, he ruled that there was improper notice. Well, he is required to put us on notice within two years of the loss. Okay. Well, they were on notice. Now maybe he didn't, maybe he wasn't following everything that was going on before this because he's, he's a new person, but, um, they were advised nine months before that we were going to make a claim for bodily injury, and that can only be U M or UIM. And so, um, the, the, uh, uh, the notice that we sent to them at that time said that we would give them the opportunity to explore, uh, if, if they thought maybe they didn't agree with the form which the policy limits, uh, were, were, uh, represented, uh, sworn to it, whether they wanted to dispute, uh, but that we intended to proceed with the, the, um, uh, the, the process of, uh, meet of, uh, arbitration. And it's stating, we intend to proceed with a claim or lawsuit for the UIM depending on a confirmation from the other insurer. And, uh, uh, now that was on that, that communication then on, uh, November the 12th of 18, that's 37 days after the two-year anniversary. Um, he's saying, well, he's required to put us on notice within two years. They were on notice and they were following everything, including her medical and the, the, uh, uh, where we were is that, um, we said that we intend to proceed under their policy there. That means we do one of two things. Well, the first thing we have to do is we reach an agreement on the number or alternatively, if one of the two parties says, no, we're not going to agree on the damages, then either party, uh, would make the written demand for arbitration. It's, it's not just the, and that's, uh, on my brief at page nine, uh, paragraph three in the, in the, uh, UIM coverage. So, uh, the, the, the case here really is that, um, and, and by the way, it makes sense that they would have this provision there because frankly, in all the years of my one in country mutual in which we've ever, uh, we've ever had to mediate one that it was always, uh, Mark Daniels and the other guy, and we always got everything taken care of more informally, and it would make sense that they have this requirement in here because in these UIM cases, a lot of times the margins don't justify the litigation costs that would be attendant to having a mediation every time. And, and so what they're trying to get, they know that I gave them notice. What they're trying to do is they're trying to say, well, but we want the word arbitration. We want the word arbitration. Well, yeah, except that your policy says that there's a precursor to arbitration. And that is that you have to have, you have to be in agreement on what, or you have to make a good faith effort to try to reach an agreement on the amount. And then it's not just the onus on the plaintiff, the insurer also, if they're going to give up on negotiations, then they would, they can make a written demand for arbitration under their policy. So, um, in, in this instance, uh, when we say that we intend to proceed with the claim or the lawsuit, it's the, the way to proceed is, Hey, look, what are you guys going to do? You guys, you want to, we, we will talk with you about the numbers. In fact, they had the numbers, they had the, all of the information beforehand because they were getting it themselves through the, uh, through the, through us, but also through the prior medical authorization. How are we going to proceed guys? You want to do this this way? You want to do it? Are you going to want to get sued? You want to do arbitration? What do you want to do? And, uh, and so they just then filed suit for declaratory judgment saying they weren't going to, uh, pay on the claim. What I would ask the court to do is to take a look at that letter. And I do think that there really is only kind of one reasonable way to read the letter when it says that, um, we're making a claim for injuries, that the only kinds of claims that pay for injuries under that policy, it's not the property damage, it's not medical bills. It's, it's either a UM or UIM claim, and they were on notice. Uh, and that if, if, if the, if the, if that letter is adequate notice to, to put them, uh, on notice of what we have, uh, uh, that we have this UIM claim, then as a matter of law or summary judgment anyway, wouldn't, it's a question of fact, but the, there would be, it appears that there's no other reasonable way to, uh, uh, review that, um, that document other than it's notice of a, of, of a claim for bodily injuries. And the only two of those would be either UM or UIM. Um, since I goofed up and I really apologize, your honors, how much time do I have left? You've got seven seconds, but obviously while Mr. Jenkins was, uh, giving us his argument, you might be able to find what you're looking for and present it during your rebuttal. Well, yeah, my face. Sure. Go ahead. And thank you very much for your patience. And I apologize that I hit the wrong button and can't figure out which one I need to hit. Happens all the time. Uh, before we let you go though, Justice McHaney or Justice Page, do you have any questions? No questions. Mr. McGlynn, have you lost your zoom screen? Yeah, I have. Uh, no, I haven't lost my, well, you know, your honor, uh, I have in front of me, it says open, share, copy link, always keep on this device, run administrator. It has a blue button at the very bottom of your screen. Do you have a blue button? I do. Yes. Click on that and see if that helps you. That looks like it. Well, your honor, that just proves you're more technically savvy than I am. And I do appreciate the quick way in which you, uh, helped me to figure that out. Thank you, your honor. I have no further questions. Thank you, Mr. McGlynn. So, Mr. Jenkins, go right ahead. Thank you, your honors. May it please the court and counsel. Good morning to you all. Um, my name is David Jenkins. I represent the Plano-Frappelli country preferred insurance company and country's asking that the summary judgment below be affirmed because the, Westerheide did not make an arbitration demand within two years of the accident, which is what's required by the, uh, country mutual policy. Under the plain and unambiguous terms of the country policy, Westerheide had two years from the date of the accident, uh, which was October, 2016 to make a written demand for arbitration for the underinsured motorist coverage benefits. And this as the Illinois Supreme court ruled in the, uh, Whitehead decision, Whitehead number one, the two year limitations provision in the insurance policies allows the insured a sufficient amount of time to ascertain the dimensions of a possible claim for underinsured or uninsured motorist benefits. And if necessary to take the steps that in accordance with the policy to initiate a dispute resolution procedure, Westerheide didn't take the steps to make an equivocal demand for arbitration, which is what's required by the policy. We submit your honors that this case is, uh, the Whitehead decision by the Illinois Supreme court is dispositive. It makes it clear that notice of a claim is not the same as a demand for arbitration, which has also been consistently decided by cases since Whitehead that have confirmed that. Mr. Jenkins, what's your position on the tolling of that two years? Yes. In, in, in tolling number one, tolling is not applicable here for a number of reasons. Tolling requires a proof of loss to be filed. And in some form country's policy required a sworn proof of loss, and there's nothing in the record that any type of sworn proof of loss was submitted by country mutual. So for instance, did the language of the policy say that a special form had to be filled out? It did not, but it did require at least a sworn statement and the cases that have given some leeway as to what constitutes a sufficient proof of loss have had more information, police reports, here's information regarding the, uh, the insurance that's available. And even in the case that we cite the Leon case, despite all of that information, there was not a proof of loss in the country case, the Whitehead case, which was country mutual. There was a form that was filled out and submitted to country mutual within the timeframe. So there was a form available. And again, the cases say it's irrelevant, whether the insurance company asks for the form, the fact that there's no proof of loss submitted is why there's no tolling. The council could have said, hey, my question though is what does constitute proof of loss when the insurance company has medical authorizations, is obtaining medical records, taking a statement? I mean, what more do you have to do in order to satisfy that proof of loss, a burden and start the tolling? Well, number one, your honor, there's no evidence in this case that there was a sworn statement given by the insured. If I call and say, hey, I'm in an accident and they get medical records, the cases are fairly clear that that's not enough. There has to be, here's the police and accident report. Here's the potential witnesses, because if it's an uninsured motorist claim or under insured, I have to find out who's at fault. Was the other insured driver, the other driver at fault, was our driver at fault and the damages. So it's usually some sort of an authorization in the Whitehead case. I believe it was Whitehead. The insured actually was given a deposition by the insurance attorney that says, here's what happened in the accident. Here's my injuries. I lost work and all that type of information. Here's the potential witnesses. And if I know it, here's the available insurance from the other driver. In your honors, I do think one thing is important because I think I need to nail down on the letter that counsel wrote. The letter in February doesn't mention uninsured motorist coverage, doesn't mention arbitration. And as I mentioned, the Whitehead case said, and specifically in paragraph 40, because not only did the Whitehead case say that the two-year limitations period doesn't violate public policy, in paragraph 40, they addressed the circuit court's decision in reference to a claim for uninsured motorist benefits that was made. And the court said it seems clear from the prefatory reference in the circuit court's order that the circuit court believes some type of action as defined in the policy was initiated by Whitehead on that date, but the action was untimely. The court says the use of the term claim in this context is not, in our view, synonymous with taking legal action against the insurer, which is defined in the policy as a suit, action, or arbitration proceeding. In any event, our review of the facts alleged in the party's pleadings indicate that Whitehead never initiated any type of legal action to settle her claim within the applicable time frame. I note this because on paragraph 13 of the opinion, the Supreme Court talks about a letter that the insured's attorney wrote, which the court obviously did not consider to be notice of an initiation of an arbitration proceeding. No action, no suit, no arbitration demand. And in paragraph 13, they specifically reference a May 2009 letter that was timely, where the counsel said that my client has placed in my hands as her attorney for collection a certain suit, claim, demand, or cause of action against you, the insurance company, growing out of negligence of certain underinsured motorists. So the Supreme Court, consistent with the Mayer case that we cite, consistent with the Ryan case that we cite, says that notice of a claim isn't what's required. A legal action must be brought, and the policy specifically says that the type of legal action, if it's arbitration, requires a demand by the insured for arbitration. And that specifically is in paragraph seven of, which is the legal, the two-year paragraph says, arbitration will not be commenced until we receive your written demand for arbitration. I also want to, counsel referenced... Mr. Jenkins. Yes, ma'am. Why would somebody request arbitration until such time as the demand for payment has been declined? Well, first of all, arbitration is demanded, there's two scenarios. If there's no agreement as to who's at fault or no agreement on the damages. Well, that's an indication that the insurer has a problem with the claim. Exactly. And when the two-year period is about to expire, if there hasn't been an agreement, it is simple for someone, it's like any statute of limitations, you file suit or demand arbitration to preserve your right. And there's nothing in the policy that says... Why would anybody demand arbitration if, for example, in Missouri, where there's an extended statute of limitations, and your policy requires that they go after that policy first, that's the whole purpose for tolling, isn't it? Well, tolling is one thing that a party could utilize to take care of that situation. If they say, hey, I don't know the limits, let me file my proof of loss, give me the form to submit a proof of loss, and we can do so, or I can make an arbitration demand. Because again, the issues that could be arbitrated have no relation to the other case has been resolved or settled yet. For instance, who's at fault can be determined without settlement of the underlying case, and also the damages. If the plaintiff says, your limits are 30,000, I have 50,000 in damages, we can still arbitrate the amount of damages. The cases that we cite in the brief say that these conditions all go to when and if payment will come. So we can arbitrate how much money is at fault, and then say, okay, have you collected from the other insurer? If so, how much? And then we can figure out what kind of check we write. In the meantime, we can arbitrate those decisions, or as frequently as the case, they can agree to put those off until after the underlying case is decided, if that's so. But that's not the case law. The case law says that as long as a proof of claim is filed as required by the policy, then there's a tolling period on the provision for arbitration until the claim is denied by the insurer. Well, your honor, I disagree that the case law requires notice of a claim sufficient. Let me ask you about American Access Casualty Company versus Tutson. In the Tutson case, the insured submitted a letter saying, I'm demanding the limits of the policy, provided the police report, submitted to an examination under oath by the insurance company. Again, there was a sworn statement under oath and provided the bills and evidence regarding the claim, which the court said that was sufficient in tolling. In our case, there was no sworn statement or any submission similar to a sworn statement submitted to Country Mutual that could have tolled. Did the policy for Country Mutual require a claim form or a sworn statement and police reports and everything else that you've been describing? That's what I'm asking, is what did the policy require as far as a quote claim form? Well, the policy requires a sworn proof of loss. What is that? In the Whitehead case, there was an actual claim form that Country Mutual provided. I'm asking about the policy here. What policy language defined the sworn proof of loss? Was there any? No, your honor, there's no language in the policy that says, here's the specific form of a proof of loss. But what the cases in the statute do say is that there has to be, for tolling, a proof of loss of some form. Country's policy required a sworn proof of loss. So if we're going to provide any type of proof of loss, there has to be a documentation of a signed statement of some sort from the insured that submitted to toll the provision. And contrary to all the other cases, Ms. Weisterheide never made a demand for arbitration or suit. So there was nothing. But you don't get to arbitration as long as there's tolling. Well, when there's a denial of the arbitration or denial of the claim, which there was in this case, then the tolling stops. And now you have whatever, in this case, a few months left to file your claim or arbitration demand. And they never filed a claim or arbitration demand. So even if there's tolling, they need to take the next step once it's denied. Because in this case, it was denied on the same day. I think October 19, 2018, they specifically said your underinsured claim is being closed. So we're closing the claim. They had time to file their demand for arbitration, time to initiate a litigation, and they didn't do so. So therefore, the tolling still doesn't even help them if it applied. Okay. So now if we have tolling, you have a letter that denies the claim, right? If we disagree with this tolling, but if there is a tolling provision, we have on October 2018, Country Mutual says, your claim was too late, we're closing your uninsured claim. So at that point, the insurance policy language allows for either party to demand arbitration. And what your insurance company did is instead of asking for arbitration, it closed the claim, contrary to the policy. Well, there's two answers to that. Number one, as I cited, the paragraph says that no arbitration proceedings will apply until we receive your demand. Number two, and I was one of the things that I need to do, and I'm glad you raised this because I need to correct something. Both parties have cited the incorrect arbitration provision of the A57. Appendix A57 talks... There it is. It's an endorsement that changed provisions of the policy, including paragraph three arbitration. It made two changes. One, it added the words underinsured motorist vehicle in the first clause. And second, it changed the word each party. So it reads the insured. And if you go down to toward the bottom of appendix A57, it now reads, if we and an insured disagree over whether the insured is legally entitled to recover damages from the owner or operator of an uninsured or underinsured motor vehicle, or if agreement cannot be reached on the amount of damages, the insured must make a written demand for arbitration. So we've argued in our briefs that the cases as well as the other provisions of the policy make it clear that the insured must make the demand. It is abundantly clear under this policy, the insured is the person that has two years to make a unequivocal demand for arbitration. And no such demand was made here even after the arbitration claim was closed. So even if there's tolling, your honor, we submit, there was never any demand for arbitration made. The letter's not sufficient. I see that my time's up. If I could have a few seconds just to conclude. Thank you, your honor. Again, the council's letter doesn't mention arbitration, doesn't mention even underinsured motorist or even uninsured motorist claims. So we submit it's not sufficient. And to accept their arguments is every time a lawyer writes a letter to the insurance company or exchanges information with the insurance company, that's enough to proceed with arbitration or that's enough to constitute tolling. And we submit the cases do not support that position. And we ask that the circuit court be affirmed that summary judgment was proper. Thank you very much. Thank you, your honor. Before we move on, hold on, Mr. McGlynn. I don't know if Justice McCaney or Justice Case have any final questions for Mr. Dinkins. No questions. No further questions. All right, thank you. Mr. McGlynn, go right ahead. Okay, thank you. The first thing is that he said that a sworn proof of loss is required. Well, I think they do say that they got her because if you look on my brief on page seven and page eight, it does talk about what is required on behalf of the plaintiff or the insured to do. And it says that you're supposed to promptly send us legal papers, make the motor vehicle available for inspection. It says submit to medical examination, although they didn't have her show up for it, but they did do an IME. It says also submit to examinations under oath by any person we name and as often as we reasonably require. This also applies to the insured representatives. Okay, well, what they got was, and as the statute provides, which is cited on page 16 and 17 of my brief, which is that there's tolling from the date a proof of loss is filed in whatever form is required by the policy until the date the claim is denied in whole or in part. So in this instance, she cooperated, it did say in there to provide, she did provide the medical authorizations. So they have to create a fiction to say she didn't do what we required, but all that the tolling provision requires is that, okay, she has to cooperate with you in whatever form you're going to say she has to all this. And she did that. And it doesn't, the record does not establish that she refused to give a statement or a sworn statement quite to the contrary, but they had a right if they wanted to make it sworn or unsworn, but it was a rear ender. So they probably figured what the, what differences it make. As to the whole business about the arbitration, as I said, I don't know that anybody in my office has ever arbitrated one with Country Mutual. We've only arbitrated one I can think of with State Farm because everybody knows in these cases, usually the margins are such that it's not, what the insurance company wants to do is they don't want to pay three lawyers to figure out the value of the case and a doctor for his deposition and the videographer and the witnesses to show up. They don't want to pay for all that on a case that may involve 10, 20,000, because that's what they're spending on the defense. And so it all makes sense why they have this in the policy and why it always seems like it carries it out that, look, here's what we really want to do. You are required to participate in good faith after you do all these other things and satisfy our conditions to participate in good faith with seeing if we can get this thing resolved. And if we can't, whoever decides that they don't want to do it, then they can file for arbitration if they want. But in this instance, one of the things is when he was talking about Whitehead, that was a U.M. case, and U.M. cases are so much different from a U.I.M. because a U.M., they do typically have a form that they have an individual fill out that they call proof of loss, and because it's immediately, the only person on the hook is the insurance company immediately, whereas in a U.I.M. claim, most cases never get to a U.I.M. And even if they get to a U.I.M., there's not enough money to go around, so there's a compromise on the policy. And the briefs are citing to either party having the duty to first talk about settlement and then move to arbitration, which is why what we would do in a courtesy is to say, look, we'll proceed with the claim or a lawsuit for a U.I.M. depending on the confirmation from the other insurer for its limits and stacking. And so I think it really is, it's basically a new guy walks in who hasn't been around, Mr. Green, and he doesn't do things the way everybody else has always done things, and it's, oh, you're 13 days late, probably not realizing that we notified him nine months earlier, and then just tried to hang on to it by saying, well, let's see if we can screw these people on what they paid for their policy by saying, well, wait a minute, wait a minute, we need to see that word arbitration specifically, when their policy gives leeway in how you articulate that, and you want to be courteous and say, I'll try to resolve it before we have to arbitrate it, because usually nobody wants to pay the money to arbitrate them. And so I think that as a matter, I don't think there is a way to read that letter nine months earlier that asked for bodily injury, then to say that we're seeking that portion of recovery under the policy for bodily injuries. And they were on notice, they knew what was happening, we were in contact with them, there wasn't any prejudice, we kept them up to date, we did everything that they wanted us to do, she did everything they wanted them to do, if they wanted to do more, they could have in terms of statements, in terms of, they did do an IME, they could have done one where they required her to go, they did just a record search, but she complied, we complied, and they're just trying to play gotcha, because they said you're 13 days late, that's, and then there's 13 days, and then there's 37, those were the first date that I said, hey, I think we got something here, maybe, and then when everything, when they provided their policy, provided the policy limit, it then became clear, that's 37 days later, that there was going to be an overage, and so hey, what do you guys want to do, how do you want to go, you want to, we intend to proceed, yeah, you want to do, how do you want to proceed on the claim, or a lawsuit, or what do you want to do, and this is Missouri, where there's a 10-year statute, even on bad faith, so my time's up, I appreciate it, and I apologize for my pressing the button, and losing contact with the court. Well, there was no problem, before we let you two go for the day, Justice McKinney or Justice Cates, do you have any final questions? No, thank you. Mr. McGlynn, do you have any response to the endorsement Mr. Jenkins brought up? That's the first time that that's come up, by anybody, but that isn't what anybody's argued up to today's date, I think the policy itself speaks to, no matter what the endorsement says, the policy itself, the text of it, is what it is, and if they wanted to remove that, then they should have done it, I don't know that even in hearing what he said about the endorsement, that that would overcome the language in the policy that says, look, first you talk settlement, and then after that, then, and only after that, do we talk about arbitration, and either party can request the arbitration, and that's how you figure out that somebody's given up on settlement. All right, thank you. I think that what everybody's been arguing, what's in the record, and I don't think that there's sufficient argument or proof that that modifies the language that everybody else has been looking at as authoritative, including the insured. All right, thank you. Well, thank you, counsel. We obviously will take the matter under review and advisement, and we will issue an order in due course.